**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| DONNA JOAN SOLBERG, | : | CIVIL ACTION |
| Plaintiff | : | |
| | : | |
| v. | : | |
| | : | |
| MARTIN O'MALLEY,[1] | : | |
| Commissioner of the | : | |
| Social Security Administration, | : | |
| Defendant | : | NO. 23-2639 |

**MEMORANDUM**

CAROL SANDRA MOORE WELLS
UNITED STATES MAGISTRATE JUDGE                                        April 30, 2024

Donna Joan Solberg ("Plaintiff") seeks judicial review, pursuant to 42 U.S.C. § 405(g), of

the Social Security Administration Commissioner's ("the Commissioner") final decision, denying

her claim for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act.

Plaintiff filed a brief supporting her request for review, and the Commissioner responded. For the

reasons set forth below, Plaintiff's Request for Review will be granted, and Judgment will be

entered in Plaintiff's favor and against Defendant.

## I.   PROCEDURAL HISTORY[2]

On October 9, 2019, Plaintiff applied for DIB, alleging that her disability began on April

23, 2019. R. at 12. The Social Security Administration ("SSA") initially denied Plaintiff's claim

on February 11, 2020, and upon reconsideration, on October 23, 2020. *Id.* On February 3, 2021,

Plaintiff appeared, telephonically, before Administrative Law Judge Kathleen McDade ("the

---

[1] Martin O'Malley became Commissioner of the Social Security Administration on December 20, 2023. Pursuant to Fed. R. Civ. P. 25(d), Mr. O'Malley is substituted as Defendant in this suit. Pursuant to the last sentence of 42 U.S.C. § 405(g), no further action needs to be taken to continue this suit.
[2] This court has reviewed and considered the following documents in analyzing this case: Plaintiff's Brief and Statement of Issues in Support of Request for Review ("Pl.'s Br."), Defendant's Response to Request for Review of Plaintiff ("Def.'s Resp."), and the administrative record ("R.").

ALJ").  *Id.* at 35.  Plaintiff, represented by an attorney, and vocational expert, Steven Gumerman ("VE Gumerman"), testified at the hearing.  *Id.* at 34-56.  On March 10, 2021, the ALJ, using the sequential evaluation process for disability, issued an unfavorable decision.  *Id.* at 26.  The Appeals Council denied Plaintiff's request for review, on February 9, 2022, *id.* at 1-3, making the ALJ's findings the Commissioner's final determination.  Plaintiff sought judicial review from this court, and, on July 29, 2022, this court granted relief by remanding the matter to the Commissioner for further administrative action.  *Id.* at 909.

Following the Appeals Council's remand order, the ALJ held a hearing by telephone on March 21, 2023.  *Id.* at 841.  Plaintiff, represented by an attorney, and vocational expert, Robert W. Jackson ("VE Jackson"), testified at the hearing.  *Id.* at 843.  On May 10, 2023, the ALJ, using the sequential evaluation process ("SEP") for disability,[3] issued an unfavorable decision.  *Id.* at 833.  After the ALJ's decision became the Commissioner's final decision, Plaintiff sought judicial review from this court on December 15, 2023.  Both parties consented to the undersigned's jurisdiction pursuant to 28 U.S.C. § 636(c)(1).

---

[3]  The Social Security Regulations provide the following five-step sequential evaluation for determining whether or not an adult claimant is disabled:

> 1.  If the claimant is working, doing substantial gainful activity, a finding of not disabled is directed.  Otherwise proceed to Step 2.  *See* 20 C.F.R. § 404.1520(b).
>
> 2.  If the claimant is found not to have a severe impairment which significantly limits his physical or mental ability to do basic work activity, a finding of not disabled is directed.  Otherwise proceed to Step 3.  *See* 20 C.F.R. § 404.1520(c).
>
> 3.  If the claimant's impairment meets or equals criteria for a listed impairment or impairments in Appendix 1 of Subpart P of Part 404 of 20 C.F.R., a finding of disabled is directed.  Otherwise proceed to Step 4.  *See* 20 C.F.R. § 404.1520(d).
>
> 4.  If the claimant retains the residual functional capacity to perform past relevant work, a finding of not disabled is directed.  Otherwise proceed to Step 5.  *See* 20 C.F.R. § 404.1520(f).
>
> 5.  The Commissioner will determine whether, given the claimant's residual functional capacity, age, education, and past work experience, in conjunction with criteria listed in Appendix 2, he is or is not disabled.  *See* 20 C.F.R. § 404.1520(g).

## II.      FACTUAL BACKGROUND

A.      <u>Plaintiff's Personal History</u>

Plaintiff, born on February 16, 1962, R. at 831, was 61 years old when the ALJ rendered her decision.  She lives alone.  R. at 846.  Plaintiff has a bachelor's degree in communications and advertising.  *Id.*

B.      <u>Plaintiff's Testimony</u>

At the February 3, 2021 and March 21, 2023 hearings, Plaintiff testified regarding limitations that she alleges result from severe recurrent depression, fatigue, inability to concentrate, constant crying, difficulty handling stress, sleep issues, anxiety, headaches, medication changes, diabetes, and hypothyroidism.  R. at 39, 847.  She stated that the symptoms of her anxiety and depression are so paralyzing and debilitating that she required psychiatric hospitalization in early 2019 after she became suicidal.  *Id.* at 848.  Plaintiff receives weekly therapeutic treatment and takes Trazadone as part of her treatment.[4]  *Id.* at 39-40, 48.  She maintained that the only side effect she experiences from her medications is severe fatigue.  *Id.* at 40.

Plaintiff stated that she has a driver's license and does drive.  *Id.* at 846.  She can shop for her groceries on a good day, but typically has them delivered to her home.  *Id.* at 42.

C.      <u>Vocational Expert's Testimony</u>

At the February 3, 2021 administrative hearing, VE Gumerman testified.  He characterized Plaintiff's past identification clerk job as a sedentary[5] and semi-skilled[6] position, and her prior

---

[4]  Plaintiff's medical records indicate that she is also prescribed Benztropine, Effexor, Gabapentin, Seroquel, Zoloft, Levothyroxine, Metformin, Cogentin, Crestor, and Albuterol.  R. at 814.

[5]  "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."  20 C.F.R. § 404.1567(a).

[6]  "Semi-skilled work is work which needs some skills but does not require doing the more complex work duties. Semi-skilled jobs may require alertness and close attention to watching machine processes; or inspecting, testing or otherwise looking for irregularities; or tending or guarding equipment, property, materials, or persons against loss,

retail sales position as a light[7] exertional, and semi-skilled position.  R. at 51.

At the March 21, 2023 administrative hearing, the ALJ asked VE Jackson to consider an individual of Plaintiff's age, education, and past work experience who could perform work at all exertional levels, but would need that work to involve simple tasks.  *Id.* at 851.  The work should be:

> goal rather than production oriented so that any production criteria can be made up by the end of the workday or shift.  It should be at the low end of the stress spectrum [. . .] the work duties should require no contact at all with the general public, only occasional interaction with coworkers, and only occasional interaction with supervisors.  Finally[,] the work should also involve few if any changes in the daily work setting, hours, location and duties from day to day.

*Id.* at 852.  VE Jackson responded that, while none of Plaintiff's past work would be possible, she, nonetheless, could perform the unskilled[8] and medium[9] exertional level jobs of: (1) night cleaner, 32,000 positions nationally; (2) floor cleaner, 57,000 positions nationally; and (3) equipment cleaner, 14,000 positions nationally.  *Id.* at 852-53.  The ALJ next asked whether an individual subjected to any of the following conditions was precluded from work: (1) no useful ability to

---

damage or injury; or other types of activities which are similarly less complex than skilled work, but more complex than unskilled work.  A job may be classified as semi-skilled where coordination and dexterity are necessary, as when hand or feet may be moved quickly to do repetitive tasks."  20 C.F.R. § 404.1568(b).

[7]  "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time."  20 C.F.R. § 404.1567(b).

[8]  "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time.  The job may or may not require considerable strength.  For example, we consider jobs unskilled if the primary work duties are handling, feeding and offbearing (that is, placing or removing materials from machines which are automatic or operated by others), or machine tending, and a person can usually learn to do the job in 30 days, and little specific vocational preparation and judgment are needed.  A person does not gain work skills by doing unskilled jobs."  20 C.F.R. § 404.1568(a).

[9]  "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds.  If someone can do medium work, we determine that he or she can also do sedentary and light work."  20 C.F.R. § 404.1567(c).

interact appropriately with coworkers and supervisors; (2) mental health symptoms, specifically panic attacks, that required the individual to arrive late or leave early from work and/or be absent two to three days per month; and (3) unable to tolerate even normal and usual work stress. *Id.* at 853. VE Jackson responded that the hypothetical individual, under any of the additional detailed conditions, would be eliminated from all competitive employment. *Id.*

### III.    THE ALJ'S FINDINGS

In her decision, the ALJ issued the following findings:

1. [Plaintiff] meets the insured status requirements of the Social Security Act through December 31, 2024.

2. [Plaintiff] has not engaged in substantial gainful activity since April 23, 2019, the alleged onset date (20 CFR 404.1571 *et seq.*).

3. [Plaintiff] has the following severe impairments: Depressive disorder; anxiety disorder; bipolar disorder (20 CFR 404.1520(c)).

4. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that [Plaintiff] has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except perform a full range of work at all [sic] exertional levels but with the following nonexertional limitations: the work should involve simple, routine tasks. It should be goal-oriented rather than production-oriented allowing for any production requirements to be accomplished by the end of the workday or work shift. In order to further reduce work stress, the work duties should require no contact with the general public and only occasional interaction with co-workers and supervisors. The work should involve few changes in the work setting, schedule, duties, and location from day to day.

6. [Plaintiff] is unable to perform any past relevant work (20

CFR 404.1565).

7. [Plaintiff] was born on February 16, 1962 and was 57 years old, which is defined as an individual of advanced age, on the alleged disability onset date. [Plaintiff] is currently 61 years of age (20 CFR 404.1563).

8. [Plaintiff] has at least a high school education (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that [Plaintiff] is "not disabled," whether or not [Plaintiff] has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering [Plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform (20 CFR 404.1569 and 404.1569(a)).

11. [Plaintiff] has not been under a disability, as defined in the Social Security Act, from April 23, 2019, through the date of this decision (20 CFR 404.1520(g)).

R. at 823-24, 826, 831-32.

## IV.   DISCUSSION

### A.   Standard of Review

Judicial review of the Commissioner's final decision is as follows. The Commissioner's findings of fact will not be disturbed if substantial evidence supports them. *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91 (3d Cir. 2007); *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999). Substantial evidence is not "a large or considerable amount of evidence, but rather 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). While it is more than a mere scintilla of evidence, *Biestek v.*

6

*Berryhill*, 139 S. Ct. 1148, 1154 (2019), it may amount to less than an evidentiary preponderance. *Fargnoli v. Halter*, 247 F.3d 34, 38 (3d Cir. 2001); *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988).

Overall, this test is deferential to the ALJ. *Monsour Med. Ctr. v. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986), *cert. denied*, 482 U.S. 905 (1987). The court should affirm the ALJ's findings of fact that are supported by substantial evidence, even when the court, acting *de novo*, might have reached a different conclusion. *Id.* Indeed, the court may not undertake a *de novo* review of the Commissioner's decision by reweighing the record evidence itself. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011); *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005); *Monsour Med. Ctr.*, 806 F.2d at 1190-91. Nor is the court permitted to "impose [its] own factual determinations." *Chandler*, 667 F.3d at 359. *See Burns v. Barnhart*, 312 F.3d 113, 118 (3d Cir. 2002) ("We also have made clear that we are not permitted to weigh the evidence or substitute our own conclusions for that of the fact-finder."). By contrast, the Commissioner's legal conclusions are subject to *de novo* review. *Poulos*, 474 F.3d at 91; *Schaudeck*, 181 F.3d at 431.

B.    Burden of Proof in Disability Proceedings

To be found "disabled" under the Act, Plaintiff must carry the initial burden of demonstrating that she cannot engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a). Plaintiff may establish a disability through: (1) medical evidence meeting one or more serious impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1; or (2) proof that the impairment is severe enough that Plaintiff cannot engage in any type of "substantial gainful

work which exists in the national economy." *Heckler v. Campbell*, 461 U.S. 458, 460 (1983); 42 U.S.C. § 423(d)(2)(A).

Under the first method, Plaintiff is considered *per se* disabled by meeting one of the "listed" impairments. *Heckler*, 461 U.S. at 460. Under the second method, Plaintiff must initially demonstrate that a medically determinable impairment prevents returning to their past employment. *See Brown*, 845 F.2d at 1214. If Plaintiff proves that the impairment results in functional limitations to performing their past relevant work, then the burden of proof shifts to the Commissioner to prove that work exists in the national economy, which Plaintiff can perform given their age, education, work experience, and residual functional capacity. *See Poulos,* 474 F.3d at 92; *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993).

C.    Review of the Administrative Law Judge's Decision

Applying the sequential evaluation process, the ALJ concluded that Plaintiff could not perform any of her past relevant work. R. at 852-53. However, she could perform other work in the national economy, since other suitable jobs exist in significant numbers. *Id.* These jobs included those identified by the VE: (1) night cleaner, (2) floor cleaner, and (3) equipment cleaner. *Id.* The ALJ concluded that, based on Plaintiff's age, education, work experience, and residual functional capacity ("RFC"), she was not disabled from April 23, 2019, through the date of her decision, May 10, 2023. *Id.* at 832-33.

At the first administrative hearing, Plaintiff stated that the symptoms of her depression and anxiety preclude her from performing her prior or any other type of work. R. at 38-39. In her brief, Plaintiff argues that remand is warranted because the ALJ's RFC assessment is not supported by substantial evidence. Pl.'s Br. at 1. More specifically, she states that the ALJ committed reversible legal error when she evaluated the opinions of her three treating mental health providers.

*Id.* The Commissioner denies Plaintiff's assertions, states that substantial evidence supports the ALJ's RFC, and states that she properly evaluated the opinions at issue. Def.'s Resp. at 3. This court finds that the ALJ committed reversible legal error by failing to adequately address the required supportability and consistency factors when evaluating the medical opinions of the three treating medical sources.

<u>The ALJ Committed Reversible Legal Errors When Reviewing the Opinions of Plaintiff's Treating Sources by Failing to Explicitly Consider Required Factors</u>

Plaintiff argues that the ALJ's RFC is unsupported by substantial evidence, because the ALJ failed to evaluate properly the medical evidence supporting her claim that the symptoms and limitations related to her depression and anxiety render her disabled. Pl.'s Br. at 4.[10] Plaintiff specifically asserts that the ALJ erred by failing to "properly evaluate the medical opinions of treating mental health providers Alyssa Reed, CRNP, Korina Hasbrouch, MS, and Syed Ibrahim M.D." *Id.* She states that the ALJ failed to meaningfully (or at all) discuss whether each treating source's opinions were supported and consistent, as required by the applicable regulations. *Id.* at 5. This court agrees and finds that Plaintiff is entitled to relief, because the ALJ committed reversible legal error when she evaluated each of the medical opinions at issue.

Plaintiff filed her application on October 9, 2019, hence, the new regulations for evaluating medical opinion evidence apply. 20 C.F.R. § 404.1520c. When an ALJ considers medical opinions in the record, these governing regulations indicate that supportability and consistency are the two most important factors.[11] 20 C.F.R. § 404.1520c(b)(2). Indeed, those are the only two

---

[10] While Plaintiff and Defendant dispute whether the ALJ's RFC decision lacked substantial evidence, this court finds that the more specific and actual legal errors that the ALJ committed are centered around her failure to properly consider required factors when reviewing the three opinions at issue. Therefore, this court shall remand on this basis.

[11] These regulations identify five factors for evaluating medical opinions that the ALJ should consider: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors. § 404.1520c(c)(1)-(5).

factors an ALJ must consider explicitly. *Id.* Supportability refers to the objective medical evidence and accompanying explanation the medical source provides to justify her medical opinions. 20 C.F.R. § 404.1520c(c)(1). Consistency refers to whether, and how consistent, the medical source's opinion is with evidence from other medical and nonmedical sources in the record. 20 C.F.R. § 404.1520c(c)(2). In addition, if a medical source provides multiple opinions, an ALJ is not required to provide an analysis of each opinion, instead, the ALJ may address how the relevant factors apply to each source's opinions collectively. 20 C.F.R. § 404.1520c(b)(1).

    a. <u>Alyssa Reed, CRNP</u>

Plaintiff argues that the ALJ performed a flawed supportability and consistency analysis of treating source Alyssa Reed's opinion. Pl.'s Br. at 6. This court finds that the ALJ adequately addressed consistency but did not sufficiently address supportability of her opinions. The failure to explicitly consider both factors is considered to be legal error in this district. *See Love v. Kijakazi*, No. 20-5221, 2021 U.S. Dist. LEXIS 183985, at *26-27 (E.D. Pa. Sept. 27, 2021) (stating that an ALJ's error in addressing supportability warrants remand).

Ms. Reed found that Plaintiff had mood swings, insomnia, anxiety, and depression, but stated that these symptoms were mostly controlled with medications. R. at 830-31. According to Ms. Reed, Plaintiff had, *inter alia*, marked limitations in concentration, persistence, and pace; had experienced four or more episodes of decompensation lasting more than two weeks in the prior 12 months; and would miss four or more days of work per month. *Id.* at 830-31. Notably, Ms. Reed found no limitations in activities of daily living and moderate limitations in interacting with others. *Id.* at 830. This opinion meets the old B criteria for Listed Impairment 12.06.[12]

---

[12] This treating source erred in using (for unknown reasons) the old paragraph B criteria of listings 12.04 and 12.06 that require at least two of the following: (1) marked restriction of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence or pace; or (4) repeated episodes of decompensation, each of extended duration. Nonetheless, when comparing both regulations, she

The ALJ ultimately found Ms. Reed's opinion regarding Plaintiff's limitations unpersuasive, because it was not consistent with her own treatment notes which documented benign findings for Plaintiff's mental examinations. *Id.* at 831. Additionally, the ALJ found the opinion unpersuasive, inasmuch as it was inconsistent with Plaintiff's daily activities, including taking care of herself and her pet. *Id.* This court finds that the ALJ's consistency assessment is well-reasoned and adequate, with citations to the record providing more than a scintilla of evidence to support her conclusion concerning consistency. Therefore, the ALJ's consistency decision was supported by substantial evidence. *Biestek*, 139 S. Ct. at 1154.

The ALJ, however, completely failed to explicitly address supportability as required under the governing regulation. *See* 20 C.F.R. § 404.1520c(b)(2). Furthermore, although the ALJ was not required to use any "magic words" in her analysis, *see Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004), a simple summary of an opinion does not fulfill the regulatory requirement to "explain how" supportability was considered. *See* 20 C.F.R. § 404.1520c(b)(2); *Love*, 2021 U.S. Dist. LEXIS 183985, at *26-27.

Remand is not required to correct errors that would not affect the outcome of the case. *See Rutherford*, 399 F.3d at 553. Here, however, the error may have affected the outcome of the case. Had the ALJ properly addressed supportability, she may have found that Plaintiff would satisfy the requirements of Listed Impairment 12.06. This court must analyze the ALJ's conclusion based solely upon the explanations actually provided, *Fargnoli*, 247 F.3d at 44 n.7 (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 87 (1943)), and, here, she simply failed to provide reasoning addressing supportability. Hence, the ALJ's error is not harmless; this case should be remanded for the ALJ to render a proper evaluation regarding the supportability of Ms. Reed's opinion.

---

found one marked limitation that is still used and found the equivalent in the old regulations of what would be a marked limitation under the new regulations.

b. <u>Korina Hasbrouch, MS</u>

Plaintiff additionally takes issue with the ALJ's review of the opinion provided by treating source Korina Hasbrouch, MS.  Pl.'s Br. at 8.  This court rejects Plaintiff's contention that the ALJ did not properly address the opinion's consistency with the record, but finds that the ALJ did not adequately address the opinion's supportability.

The ALJ reviewed Ms. Hasbrouch's January 20, 2021 opinion, and detailed her assessments.  Ms. Hasbrouch found that Plaintiff had major depressive disorder, bipolar disorder, and anxiety disorder.  R. at 830.  She assigned marked limitations in a) performing daily-living activities; b) maintaining social functioning; and c) concentration, persistence, and pace.[13]  *Id.*  Ms. Hasbrouch indicated that Plaintiff's symptoms ranged from moderate to severe and that Plaintiff had difficulty getting out of bed.  *Id.*  She also noted that Plaintiff had experienced one or two episodes of decompensation; and opined that Plaintiff would be unable to sustain competitive employment at this time, because she reports "high levels of anxiety at work, conflicts with supervisors, and having to take excessive days off due to her mental and physical health conditions."  *Id.*

In addressing the consistency of Ms. Hasbrouch's opinion, the ALJ found "significant discrepancies between the alleged symptoms and the limits identified, as contrasted to those found in and [consistent with] the record."[14]  *Id.*  She also noted that Ms. Hasbrouch's assigned limits far exceeded the clinical mental findings.  *Id.*  The lack of consistency, therefore, rendered it

---

[13]  In order to meet Listed Impairments 12.04 or 12.06, Plaintiff would need extreme limitation in one or marked limitation in at least two areas of mental functioning.  *See* 20 C.F.R. Pt. 404, Subpt. P, App'x 1, §§ 12.04(B), 12.06(B).  Ms. Hasbrouch's opinions satisfy the paragraph B criteria for Listed Impairments 12.04 and 12.06.  This is significant because these opinions, if accepted, would render Plaintiff disabled, without regard to her RFC.

[14]  The ALJ found that Ms. Hasbrouch's inclusion of mania and hallucinations, as symptoms the Plaintiff was experiencing, was inconsistent with the other record evidence.  R. at 830.  Additionally, she found the limits inconsistent with Plaintiff's treatment history.  *Id.*

unpersuasive. *Id.* A finding of substantial evidence requires little evidence. *Biestek*, 139 S. Ct. at 1154. Since the ALJ sufficiently explained her consistency analysis, this court concludes that the ALJ's finding concerning consistency is supported by substantial evidence.

Nevertheless, the ALJ inadequately expressed her consideration of supportability by making no mention of it. As previously discussed, this is error on its face. The court will remand for the ALJ to consider the opinion's supportability pursuant to the applicable regulations. *See* §§ 404.1520c(b)(2), (c)(1); *Love*, 2021 U.S. Dist. LEXIS 183985, at *26-27.

c. Syed Ibrahim, M.D.

Plaintiff faults the ALJ for failing to address how treating source Dr. Ibrahim's opinion was consistent with that of Ms. Hasbrouch. Pl.'s Br. at 10. Plaintiff complains that the ALJ failed to acknowledge that Dr. Ibrahim actually signed Ms. Hasbrouch's opinion. *Id.* at 10. She appears to argue that the ALJ did not address how Dr. Ibrahim's opinion was consistent with the opinion of Ms. Hasbrouch, because Dr. Ibrahim co-signed the latter's opinion.[15] *Id.* at 11. This court finds that the ALJ did not adequately address the consistency factor as applied to Dr. Ibrahim's opinion.

In addressing consistency, the ALJ cited Dr. Ibrahim's notation that Plaintiff had not required any higher level of care, beyond routine medical checks with him. *Id.* at 828. She also noted that Dr. Ibrahim frequently remarked that Plaintiff's medical status examinations were normal. *Id.* The ALJ was not required to use any particular language in her consistency analysis. *See Jones*, 364 F.3d at 505 (stating that the ALJ's analysis need not use any particular language). However, she needed to provide more than a summary and explicitly address how Dr. Ibrahim's opinion was consistent with the other evidence, such as Ms. Hasbrouch's opinion. *See* 20 C.F.R. § 404.1520c(b)(2). In doing so, she would have likely touched on other relevant factors. For

---

[15] Again, this is significant because, if accepted, these opinions would render Plaintiff disabled without regard to her RFC.

example, in January 2020, Dr. Ibrahim found Plaintiff to be alert, oriented, and her memory intact. R. at 828. He concluded that Plaintiff was receiving supporting therapy and did not mention any need to change Plaintiff's medications or the frequency of her treatment. *Id.* Since this is more than a year before Ms. Hasbrouch's opinion, it is possible that Plaintiff's condition had worsened, a longitudinal factor that the ALJ could have also considered. *See* § 20 C.F.R. 404.1520c(c)(3). Additionally, the fact that his opinion was consistent with Ms. Hasbrouch's opinion is an area that the ALJ neglected to mention. The ALJ's summation of Dr. Ibrahim's opinion, without providing an adequate consistency analysis, did not fulfill the ALJ's obligation to explain how she considered consistency, which constitutes legal error in this district. *See Lawrence v. Kijakazi*, No. 22-4955, 2023 U.S. Dist. LEXIS 193819, at \*33-34 (E.D. Pa. Oct. 30, 2023); *Burgess, Kijakazi*, 2022 U.S. Dist. LEXIS 228377, at \*32-33 (E.D. Pa. Dec. 19, 2022).

The applicable regulations dictate that the ALJ must explain how she considered consistency. *See* 20 C.F.R. § 404.1520c(b)(2). The ALJ here failed to do a proper consistency analysis because she ignored evidence that Dr. Ibrahim's opinion was consistent with other record evidence. Under longstanding Third Circuit precedent, an ALJ's failure to consider evidence that would support a different conclusion is reversible legal error. *Adorno v. Shalala*, 40 F.3d 43, 48, (3d Cir. 1994). On remand, the ALJ shall address whether Dr. Ibrahim's opinion is consistent with the record evidence.[16]

---

[16] Plaintiff does not raise or challenge the ALJ's supportability analysis for Dr. Ibrahim's opinion. Nonetheless, this court notes that the analysis was adequate inasmuch as the ALJ details how Dr. Ibrahim supported his conclusions with references to treatment notes. R. at 828.

## V.   CONCLUSION

A thorough review of the relevant law and the record indicates that the ALJ committed reversible legal errors.  Accordingly, Plaintiff's Request for Review is granted.  An implementing Order and Order of Judgment follow.